**2015 UT App 236**

## THE UTAH COURT OF APPEALS

RYAN D. PECK,
Petitioner and Appellant,
*v.*
NATHALY POLANCO,
Respondent and Appellee.

Memorandum Decision
No. 20140079-CA
Filed September 17, 2015

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 114402157

Brent D. Wride and Bryant McConkie, Attorneys
for Appellant

Aaron P. Dodd, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES MICHELE M. CHRISTIANSEN and JOHN A. PEARCE
concurred.

ROTH, Judge:

¶1   Ryan D. Peck (Father) appeals the trial court's
determination that custody of the parties' children remain with
their mother, Nathaly Polanco (Mother). We affirm.

¶2   Father and Mother were married in Utah in April 2006.
The couple moved to the Dominican Republic, Mother's place of
birth, in November 2008. The parties entered into a pro se
stipulated divorce decree in December 2011. The stipulation
provided for joint legal and physical custody of their three
children. Father moved to California following the divorce, and
Mother remained in the Dominican Republic. Father filed a
petition to modify the divorce decree in May 2012. He alleged

that Mother had failed to comply with the divorce decree, particularly with respect to their agreements related to the care of the children, and sought sole physical custody and joint legal custody with Mother.

¶3     The trial court appointed a custody evaluator (the Evaluator). The Evaluator spent time with the children and both parents, traveling to both California and the Dominican Republic, and interviewed extended family members, teachers, and others who interacted with the children. The Evaluator concluded that an arrangement where the parents lived closer together and shared parent-time equally would be ideal. If such an arrangement was not feasible, he recommended that primary physical custody be transferred to Father.

¶4     At trial, the court heard from several witnesses including Mother, Father, the Evaluator, the children's grandmothers, and a family acquaintance with whom Mother had lived as a college student. The trial court entered a lengthy written decision denying Father's petition. The court noted this was a "very, very difficult" case because "[i]t is a very, very close case and difficult decision and each party's position has strong merit." The court further stated, "Each parent in this case is competent, good, loving and caring and each equally wants to be with their children and genuinely believes the children would be better off with him or her. Their decision to divorce and live in two distant countries makes that impossible." Given the difficulty inherent in arranging for small children to travel frequently between the Dominican Republic and California, the trial court concluded that granting sole physical custody to one parent was best for the children. After making extensive factual findings, the trial court concluded that there was "nothing presented in support of the petition to modify that compels a major change" in the custody arrangement and denied Father's petition to modify the divorce decree. The court did order, however, that the parties consult with a qualified "co-parenting therapist to improve

communications and help provide a set, predictable, regular parent time schedule."

¶5   Father appeals the trial court's decision, contending that the court erred in rejecting the recommendation of the Evaluator and denying Father's petition to modify. "A trial court's decision concerning modification of a divorce decree will not be disturbed absent an abuse of discretion. Moreover, [i]t is the burden of the party seeking modification of a divorce decree to demonstrate that there has been a substantial change in circumstances that justifies modification." *Crouse v. Crouse*, 817 P.2d 836, 838 (Utah Ct. App. 1991) (alteration in original) (citations and internal quotation marks omitted). However, "in change of custody cases involving a nonlitigated custody decree, a trial court, in applying the changed-circumstances test, should receive evidence on changed circumstances and that evidence may include evidence that pertains to the best interests of the child." *Elmer v. Elmer*, 776 P.2d 599, 605 (Utah 1989); *Taylor v. Elison*, 2011 UT App 272, ¶¶ 13–16, 263 P.3d 448.

¶6   Father does not contest any of the trial court's factual findings; rather, he argues that "the conclusion drawn from [the] evidence must unmistakably be that the children's father should have physical custody with very liberal parent time for their mother." He points to the Evaluator's conclusion that Father should have physical custody of the children and contends that "[t]here was no contrary expert opinion offered to the court, nor was it demonstrated that the [E]valuator was incompetent, biased, or somehow unfit in his service." Accordingly, Father argues "it was improper for the court to reject the conclusion of the [E]valuator."

¶7   But "[c]ourts are not bound to accept the testimony of an expert and [are] free to judge the expert testimony as to its credibility and its persuasive influence in light of all of the other evidence in the case." *Barrani v. Barrani*, 2014 UT App 204, ¶ 4,

334 P.3d 994 (second alteration in original) (quoting *State v. Maestas*, 2012 UT 46, ¶ 200, 299 P.3d 892). "Nevertheless, [a]lthough the trial court [is] not bound to accept an expert's recommendation, the court is expected to articulate 'some reason for rejecting the recommendation.'" *Id.* (alterations in original) (citation omitted). The trial court did that here.

¶8　　The trial court explained that while it found the Evaluator's report "well done and thorough," it "simply disagree[d] to some extent with the final conclusion." The court further explained that while the court "does not intend to nor does it negate the work [of the Evaluator]," it "simply factors more heavily some facts than did [the Evaluator] and reaches an opposite conclusion from the facts." The Evaluator's recommendation focused on Father's report of "considerable difficulty in communicating with his children," Father's superior ability or desire to facilitate a relationship between the children and both parents, and the suggestion by Mother's parents "that some of the needs of the children are not being met," as well as the significant amount of time the children spend with Mother's parents instead of with Mother. The trial court's ultimate conclusion, however, gave more weight to the fact that Mother had always been the children's primary caregiver; that the children were doing well under the current arrangement; that Mother had relatives living nearby who assist with caring for the children, while Father did not have family living near him in California; and that two of the three children were born in the Dominican Republic and did not speak English—all factors the Evaluator did not appear to weigh as heavily as did the trial court.

¶9　　"[W]e will not second guess a court's decisions about evidentiary weight and credibility if there is a reasonable basis in the record to support them." *Barrani*, 2014 UT App 204, ¶ 6. Here, the trial court had before it not just the report and testimony of the Evaluator, but also the testimony of the parents

themselves and others familiar with the circumstances. Based on this testimony, the trial court concluded,

> The court believes that balancing all factors, and the many intangibles involved, given the considered options, that mother's ability to provide ongoing and personal care, given her current marital status in the homeland of the children, and given her support from a current husband and her parents even though somewhat alienated from mother, that the negatives discussed above are overcome and mother should retain primary physical custody.

We therefore conclude, as we did in *Barrani*, that "[i]n this case, the trial court explained why it was rejecting the expert's recommendation, and that explanation has a basis in the record." [1] *See id.*

---

1. It is noteworthy that the trial court did not wholly reject the Evaluator's conclusions or recommendations. Indeed, the trial court adopted the majority of the Evaluator's recommendations. The Evaluator determined that the ideal scenario was one where Mother and Father lived "in close proximity to one another, and that they develop a parenting plan that provides equal and consistent time with both parents"—a conclusion implicitly adopted by the trial court when it noted that "[t]he children need regular, ongoing, frequent contact with each [parent]." It was only if the parents were unwilling to live near each other that the Evaluator recommended primary physical custody be given to Father, a conclusion with which the trial court disagreed. However, the Evaluator also determined that "[r]egardless of the location of the parents, living close or not, it is recommended that [Father] and [Mother] work to improve their co-parenting together" and that "[i]t would be beneficial to them to work with a forensically involved therapist who understands conflictual

(continued…)

¶10    Father further contends the court erred as a matter of law in denying his petition, because "none of the factors listed in the statute and case law weighed in favor of the mother." We disagree. Father focuses on the following factors considered by the trial court in determining custody: (1) past conduct and moral standards of the parties; (2) desire for custody; (3) which parent will act in the child's best interest; and (4) the best interests of the child—including moral character and emotional stability, the ability to provide personal rather than surrogate care, which parent will allow the other parent visitation, and religious compatibility. Father argues that the trial court agreed with the Evaluator that each factor weighed in favor of Father gaining custody and that "there was no evidence" to support the trial court's conclusion that the children were better off remaining with Mother.

¶11    It is true that the trial court found that some of these factors weighed in favor of granting Father custody. For example, the trial court found that "Father is more willing to facilitate a relationship between the children and [M]other than [M]other is willing to facilitate a relationship between the children and [F]ather." And the court did state that Father was more emotionally stable than Mother, though "not head and shoulders above [M]other." However, Father's claims that the trial court found in favor of Father on each of these factors and that "none of the factors" weighed in favor of Mother misconstrues the trial court's findings and conclusions. For example, Father claims that the court found that the factor addressing the parties' desire for custody "weighs very heavily

_____

(…continued)
divorce and custody matters, and one who can help [Father] and [Mother] improve communication." The trial court accepted this recommendation and ordered the parents to work with such a therapist.

in favor of [Father]." In reality, however, the trial court determined that while "one would have to look rather far to find a greater desire [for custody] exhibited than [Father] has shown in this case," "the evidence is unsatisfactory to show much of a preference for either [party]." The trial court concluded that both parties loved their children and had their best interests at heart. And "[a]s to providing personal as opposed to surrogate care, [M]other prevails on this factor clearly."

¶12    Perhaps more importantly, the factors specifically listed by Father are only a few of the factors a trial court may take into account when making a custody or best interests determination. "There is no definitive checklist of factors to be used for determining custody since such factors are highly personal and individual, and do not lend themselves to the means of generalization employed in other areas of the law . . . ." *Sukin v. Sukin*, 842 P.2d 922, 924 (Utah Ct. App. 1992) (citation and internal quotation marks omitted). "The trial court *must*, however, make adequate findings regarding the best interests of the child and the past conduct and demonstrated moral standards of each of the parties" and "consider which parent is most likely to act in the best interests of the child, including allowing the child frequent and continuing contact with the noncustodial parent as the court finds appropriate." *Id.* (citations and internal quotation marks omitted); *see also* Utah Code Ann. §§ 30-3-10, -10.2 (LexisNexis 2012). "In ruling, the trial court should give stability and continuity the weight that is appropriate in light of the duration of the existing custodial relationship and the general welfare of the child." *Elmer v. Elmer*, 776 P.2d 599, 605 (Utah 1989).

¶13    Here, the trial court took into account each of the required factors. It made adequate findings related to the best interests of the children when it addressed the conduct and moral standards of the parties, the bond between the parties and the children, the needs of the children, the participation of the parents in the

children's lives before the divorce, the geographical proximity of the homes, and the potential for any abuse. *See* Utah Code Ann. §§ 30-3-10, -10.2 (setting forth the factors a trial court should consider when determining custody). And the trial court discussed at length the commitment of each party to cooperate with the other to facilitate a relationship between the children and the other parent. *See Sukin*, 842 P.2d at 924; *see also* Utah Code Ann. §§ 30-3-10, -10.2. The court also considered the ages of the children, the language and birthplace of the children, the support available to the children from extended family, the schooling and religious arrangements available to the children, and Mother's remarriage. The court found that the factors it had considered weighed in favor of Mother continuing as the primary physical custodian.

¶14    We recognize, as the trial court did, that this was a very difficult and close case with meritorious arguments from both parties—both of whom love and care for their children. But the fact that the evidence could also have supported a determination that Father should gain primary physical custody of the children, as the Evaluator recommended, does not make the trial court's decision in favor of Mother an abuse of discretion. "As with many close questions, the trial court is in the best position to make a decision that falls within the scope of his or her discretion . . . ." *State v. Burke*, 2011 UT App 168, ¶ 44, 256 P.3d 1102 (citation and internal quotation marks omitted). Here, the trial court heard not only from the Evaluator but also from the parties themselves, and the court ultimately concluded, for reasons clearly articulated in its thorough memorandum decision and supported by the record, that it was in the children's best interests to leave them in the primary care of Mother. *See Smith v. Smith*, 726 P.2d 423, 426 (Utah 1986) ("[I]t is essential the trial court set forth in its findings of fact not only that it finds one parent to be the better person to care for the child, but also the basic facts which show *why* that ultimate conclusion is justified."). Because we determine that the trial

court undertook the necessary best-interests analysis and made sufficient findings to support its conclusion, we conclude that the trial court did not abuse its discretion in departing from the Evaluator's recommendation in deciding to reject Father's petition to modify the custody provisions of the divorce decree.

¶15   Affirmed.

———————