2017 UT App 192

## THE UTAH COURT OF APPEALS

CATHERINE JANE SHUMAN,
Appellee,

*v.*

WESLEY ROBINSON SHUMAN,
Appellant.

Opinion
No. 20160226-CA
Filed October 19, 2017

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 104400246

Theodore R. Weckel Jr., Attorney for Appellant

James M. Hunnicutt and Julie J. Sagers, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
KATE A. TOOMEY and RYAN M. HARRIS concurred.[1]

POHLMAN, Judge:

¶1 Wesley Robinson Shuman and Catherine Jane Shuman obtained a bifurcated decree of divorce in 2011. Several years later, in 2015, all outstanding issues related to their divorce were submitted to the trial court for resolution. Following a two-day trial, the court granted primary physical and sole legal custody

---

1. After hearing the arguments in this case, Judge J. Frederic Voros Jr. retired and did not participate in the consideration of the case. Judge Ryan M. Harris, having reviewed the briefs and listened to a recording of the oral arguments, substituted for Judge Voros and participated fully in this decision.

of the parties' three minor children to Catherine.[2] The court also resolved the parties' disagreements regarding marital assets and debts, child support, medical and childcare expenses, and other matters. Wesley appeals the trial court's rulings with respect to custody, marital assets and debts, medical and childcare expenses, and child support, challenging both the adequacy of the trial court's factual findings and the sufficiency of the evidence underlying those findings. In addition, he claims the trial court's order regarding parent-time fails to conform to the court's factual findings. We affirm in part and reverse in part.

## STANDARD OF REVIEW

¶2      "We review the legal adequacy of findings of fact for correctness as a question of law." *Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 15, 257 P.3d 478 (citation and internal quotation marks omitted). "We review this issue only if it was presented to the trial court in such a way that the trial court had an opportunity to correct any deficiencies in the adequacy of the detail of the findings of fact." *Interstate Income Props., Inc. v. La Jolla Loans, Inc.*, 2011 UT App 188, ¶ 12, 257 P.3d 1073 (citing *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801).

¶3      When reviewing a challenge to the sufficiency of the evidence, we will not set aside a trial court's factual findings "unless clearly erroneous," giving "due regard to the trial court's opportunity to judge the credibility of the witnesses." Utah R. Civ. P. 52(a)(4). Challenges to the sufficiency of the evidence may be raised on appeal "whether or not the party requested findings, objected to them, moved to amend them, or moved for

---

2. "As is our practice in cases where both parties share a last name, we refer to the parties by their first name with no disrespect intended by the apparent informality." *See Smith v. Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

partial findings" in the trial court. *Id.* R. 52(a)(3); *see also In re K.F.*, 2009 UT 4, ¶¶ 60–64, 201 P.3d 985 (explaining that, to preserve the issue for appeal, parties must object in the trial court "to the adequacy of the detail of" the court's factual findings, but no similar preservation requirement applies to challenges to the sufficiency of the evidence). A party challenging the sufficiency of the evidence "will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal" the evidence in support of the challenged finding. *State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645.

ANALYSIS

I. Custody

¶4    Wesley asserts the trial court's factual findings with respect to custody were inadequate in detail and were not supported by sufficient evidence. He first contends the trial court's "findings regarding legal custody were grossly defective," in that they "omitted consideration of material evidence" he presented at trial. He also contends the trial court's findings "failed to consider many material factors relating to physical custody," and he asserts "primary custody [should be awarded] to [him] outright." Catherine responds that the trial court's findings "present substantial factual grounds supporting [its] ultimate conclusion that Catherine should continue having custody of the minor children."[3]

---

3. Catherine also contends that, in the trial court, Wesley did not contest the adequacy of the court's factual findings with respect to custody, but Wesley's challenges to the adequacy of the court's findings were largely included in his post-trial motion. While the presentation of those challenges could have been clearer, we conclude that those arguments were preserved for appellate review.

¶5    A trial court's factual findings "must be sufficiently detailed and include enough subsidiary facts to clearly show the evidence upon which they are grounded." *In re S.T.*, 928 P.2d 393, 398 (Utah Ct. App. 1996); *see also Fish v. Fish*, 2016 UT App 125, ¶ 22, 379 P.3d 882 ("Findings are adequate when they contain sufficient detail to permit appellate review to ensure that the district court's discretionary determination was rationally based."); *Rayner v. Rayner*, 2013 UT App 269, ¶ 11, 316 P.3d 455 ("Findings are adequate only if they are sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." (citation and internal quotation marks omitted)). This obligation facilitates meaningful appellate review and ensures the parties are informed of the trial court's reasoning. *See In re S.T.*, 928 P.2d at 399.

¶6    But trial courts are not required to render a global accounting of all evidence presented or to discuss all aspects of a case that might support a contrary ruling. *Cf. id.* at 398 ("A trial court is not required to recite each indicia of reasoning that leads to its conclusions, nor is it required to marshal the evidence in support of them." (brackets, citation, and internal quotation marks omitted)). Indeed, so long as the "steps by which the ultimate conclusion on each factual issue was reached" are apparent, *see Rayner*, 2013 UT App 269, ¶ 11 (citation and internal quotation marks omitted), a trial court may make findings, credibility determinations, or other assessments without detailing its justification for finding particular evidence more credible or persuasive than other evidence supporting a different outcome, *see In re S.T.*, 928 P.2d at 398–99 ("[A] trial court is also not required to explain why it found certain witnesses less credible or why some testimony was given less weight or considered irrelevant.").

¶7    Here, the trial court's findings with respect to custody span approximately six pages and detail the "subsidiary facts,"

credibility determinations, and analytical "steps by which the [court's] ultimate conclusion" on the issue of custody was reached. *See Rayner*, 2013 UT App 269, ¶ 11 (citation and internal quotation marks omitted). Without addressing the vast majority of the court's findings,[4] Wesley selectively highlights evidence from the trial record, asserts the evidence supported a different outcome, and claims the court's findings were inadequate because they did not specifically address his highlighted evidence. As set forth above, however, Wesley misunderstands the nature of the trial court's obligation, *see In re S.T.*, 928 P.2d at 398–99, and Wesley has not demonstrated how the court's findings are insufficient to support its conclusion, *see, e.g., Dahl v. Dahl*, 2015 UT 79, ¶ 123 (rejecting a claim of inadequate factual findings, concluding that "the findings were based on the evidence presented to the district court and were sufficiently detailed to disclose the steps by which it reached the ultimate distribution").

¶8      In addition, to successfully challenge the sufficiency of the evidence underlying a trial court's factual finding, "the appellant

---

4. The trial court found, for example, that one child preferred "to remain with [Catherine]" and it was a "compelling" factor to keep all of the minor children together; that Catherine "was the primary caregiver of the children when the parties were married, and it would be in [the children's] best interest to continue that continuity of care"; that Catherine had "put the best interests of the children first and . . . foster[ed] positive relationships between [the] children and [Wesley]"; that Wesley had "involved [the parties' older] children in divorce issues and communications against [Catherine]"; that Wesley had "made negative statements about [Catherine] to the children"; that Wesley had "cancelled, not shown for, been late dropping off or picking up, or not calendared[] parent time"; and that the court had "concern[s] about [Wesley's] motives and credibility."

must overcome the healthy dose of deference owed to factual findings by identifying and dealing with the supportive evidence and demonstrating the legal problem in that evidence, generally through marshaling the evidence." *Taft v. Taft*, 2016 UT App 135, ¶ 19, 379 P.3d 890 (brackets, citation, and internal quotation marks omitted). Parties challenging factual findings cannot persuasively carry their burden in this respect "by simply listing or rehashing the evidence and arguments [they] presented during trial" or "by merely pointing to evidence that might have supported findings more favorable to [them]; rather, [they] must identify flaws in the evidence relied on by the trial court that rendered the trial court's reliance on it, and the findings resulting from it, clearly erroneous." *Id.* ¶ 43. Indeed, as noted above, a party challenging the sufficiency of the evidence in support of "a factual finding . . . will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal" the evidence that supports the challenged finding. *State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645.

¶9 Wesley has not addressed most of the trial court's findings and makes no attempt to marshal the evidence in support of them. He clearly views the evidence as compelling a different outcome, but it is not within our purview to "engage in a reweighing of the evidence," *Grindstaff v. Grindstaff*, 2010 UT App 261, ¶ 3, 241 P.3d 365 (citation and internal quotation marks omitted), and Wesley has not demonstrated that the evidence underlying the trial court's findings is insufficient, *see Taft*, 2016 UT App 135, ¶ 19; *see also, e.g.*, *Fish*, 2016 UT App 125, ¶ 29 (rejecting the appellant's "attempt to inject alternative findings favorable to his preferred outcome under the guise of an adequacy-of-the-findings or sufficiency-of-the-evidence challenge").

¶10 We are, of course, sensitive to the emotional undercurrents giving rise to Wesley's challenge on appeal. This appears to have been "a very difficult and close case with

meritorious arguments from both parties—both of whom love and care for their children." *See Peck v. Polanco*, 2015 UT App 236, ¶ 14, 360 P.3d 780. "But the fact that the evidence could also have supported a determination that [Wesley] should [obtain joint custody or] gain primary physical custody of the children . . . does not" render the trial court's findings inadequate or unsupported by the evidence, nor did it require an outright grant of custody in his favor. *See id.*

## II. Marital Assets and Debts

¶11    With regard to the trial court's division of marital assets and debts, Wesley likewise contends that the trial court's factual findings were inadequate in detail and were not supported by sufficient evidence. As set forth above, to preserve a challenge to the adequacy of the detail in the trial court's findings, the challenge must be "presented to the trial court in such a way that the trial court had an opportunity to correct any deficiencies in the adequacy of the detail of the findings of fact." *Interstate Income Props., Inc. v. La Jolla Loans, Inc.*, 2011 UT App 188, ¶ 12, 257 P.3d 1073.

¶12    Although Wesley raises multiple challenges to the adequacy of the trial court's factual findings with respect to marital assets, he raised only one such assertion in the trial court, and we therefore address only that contention.[5] *See id.* Wesley's preserved argument is that (1) there were alleged discrepancies

---

5. Wesley asserts, for example, that the trial court failed to recognize and assign to the parties a debt owed on motorized scooters, but Wesley provides no citation to the record demonstrating that evidence of the alleged debt was presented to the court during trial, and it appears from our review of the record that the issue was not properly presented for the trial court's consideration.

between Catherine's valuations of marital assets as presented at trial and as presented by Catherine in other court documents, (2) Wesley presented contrary and more credible evidence as to the value of marital assets, and (3) "[t]he findings do not state why the Court discounted [Wesley's] evidence over [Catherine's]."

¶13    Here again, Wesley's argument rests on a mistaken premise as to the trial court's obligation. *See supra* ¶¶ 5–6. Both parties submitted lists of marital assets and proposed values for those assets, and the trial court's findings indicate that it credited the list of assets and values provided by Catherine. The trial court was not required to further explain its implicit determination that Catherine's evidence was more accurate or reliable than Wesley's. *See In re S.T.*, 928 P.2d 393, 398–99 (Utah Ct. App. 1996).

¶14    With regard to Wesley's challenge to the sufficiency of the evidence underlying the trial court's factual findings, the findings "are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if the court has a definite and firm conviction that a mistake has been made." *Taft v. Taft*, 2016 UT App 135, ¶ 16, 379 P.3d 890 (brackets, citation, and internal quotation marks omitted). The existence of discrepancies between the values Catherine assigned to assets in different court documents does not, standing alone, establish that the values provided in Catherine's trial exhibit were inherently unreliable or otherwise insufficient to support the trial court's factual findings. For example, at trial, Catherine testified that some discrepancies may have arisen because, in her trial exhibit, she incorporated Wesley's suggestion as to an item's value, or because the assets valued in the divorce proceeding were not the same assets valued in other court documents. In addition, while Wesley cites discrepancies in the values assigned by Catherine to a vehicle, Wesley assigned the same $3,000 value to that asset as Catherine did in her trial exhibit. Wesley's alleged discrepancies

in Catherine's various court documents thus do not demonstrate insufficiency of the evidence with respect to the trial court's factual findings regarding marital assets.[6]

¶15 The record does not otherwise present "significant" discrepancies between the evidence presented at trial and the offset awarded in Catherine's favor, as Wesley claims. However, the trial court plainly relied on Catherine's evidence in calculating the nearly $16,000 offset awarded in her favor. And as Wesley points out, that offset would have been less if based on the value of marital assets to which Catherine testified at trial, after taking into account that Catherine admitted she erroneously "included the [$600] heat blankets on her list twice." We therefore remand to the trial court to either make additional findings detailing the basis for not adjusting the offset for the double-counted heat blankets or to adjust the offset to account for the erroneously included blankets.

¶16 With regard to marital debt, Wesley challenges the trial court's decision not to hold Catherine "responsible for [the] marital debt that [Wesley] was claiming." The trial court found "no reason to hold [Catherine] liable for" most of the marital debt claimed by Wesley, finding that Catherine's bankruptcy proceeding "benefited both parties by discharging a large portion of the marital debt" and that Wesley was "not paying on the marital debt." Wesley's briefing, however, is unclear as to the type of challenge he is asserting—e.g., inadequacy of the court's

---

6. While Wesley asserts his asset values were clearly superior to Catherine's, we note that Wesley's proposed values were, like Catherine's, based on estimates of current value. The trial court's acceptance or rejection of those values turned largely on credibility determinations, and Wesley has failed to overcome the strong deference owed to those determinations. *See Taft v. Taft*, 2016 UT App 135, ¶ 19, 379 P.3d 890.

findings, insufficiency of the evidence underlying those findings, or abuse of discretion in adjusting the parties' financial interests, *see, e.g., id.* ¶ 32 ("The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and . . . this court will not disturb a court's distribution of marital property unless it is clearly unjust or a clear abuse of discretion." (citations and internal quotation marks omitted)).

¶17 As legal authority in support of his argument, Wesley includes a citation to a single, unpublished decision from another jurisdiction, without analysis or discussion thereof. But "bald citation to authority," without development and reasoned analysis, does not constitute argument setting forth the "contentions and reasons . . . with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on," as required under Utah Rule of Appellate Procedure 24. *Hampton v. Professional Title Services*, 2010 UT App 294, ¶ 2, 242 P.3d 796 (citations and internal quotation marks omitted); *see also* Utah R. App. P. 24(a)(9); *CORA USA LLC v. Quick Change Artist LLC*, 2017 UT App 66, ¶ 5, 397 P.3d 759 ("[W]hile failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (citation and internal quotation marks omitted)).

¶18 Wesley's argument also fails to address the broader picture of the parties' relative circumstances to demonstrate that, given the overall distribution of assets and debts and the parties' relative incomes and expenses, etc., the court's ruling with regard to marital debt must be reversed. As noted above, the court concluded that Catherine discharged a significant amount of marital debt through her bankruptcy proceeding and, as Wesley notes, the court awarded Wesley an additional $13,000 offset due to debt Catherine incurred. Thus, "[w]hile there is no

bright line between adequate and inadequate briefing, we conclude that [Wesley] has not developed an argument sufficient to carry [his] burden of persuasion" on appeal as to this issue. *See CORA USA*, 2017 UT App 66, ¶ 6 (first alteration in original) (citation and internal quotation marks omitted).

¶19    Wesley also asserts the trial court failed to make findings regarding a debt allegedly owed to his sister, for a loan to the parties for the purchase of stone engraving equipment. Wesley asserts that "[i]n spite of [his] evidence [with respect to the loan], . . . the findings do not classify the debt as marital, nor do they assign the debt to either party." Wesley is correct. Although the trial court noted that it would not resolve whether Wesley's sister had a right to possession of the equipment, the court did not otherwise address the alleged debt owed to Wesley's sister.

¶20    A trial court's "[f]ailure to make findings on all material issues [regarding property distribution in a divorce proceeding] is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Taft v. Taft*, 2016 UT App 135, ¶ 33, 379 P.3d 890 (first alteration in original) (citation and internal quotation marks omitted). Here, Wesley submitted evidence regarding an alleged marital debt, and the court neither addressed that evidence nor assigned the debt to either party. We therefore "remand to give the trial court the opportunity to enter more detailed findings as to the [alleged debt], and, if necessary, to amend the property division." *See id.* ¶ 47.

### III. Medical and Childcare Expenses

¶21    Wesley contends that the trial court's factual findings were also insufficient to support its ruling that Wesley reimburse Catherine over $5,000 for medical and childcare expenses. In one respect, Catherine concedes error in the trial court's calculation of the reimbursement amount, due to "duplicate entries on Catherine's list of medical and childcare expenses," and agrees

Wesley is entitled to a reduction of $702.44 in "the amount awarded to [Catherine] for medical and childcare reimbursements." We therefore instruct that, on remand, the trial court alter its judgment accordingly.

¶22 But Wesley further claims the court's findings did not "state" or "comment" on the court's rationale for not crediting Wesley's arguments or evidence as to the medical and childcare expenses each party claimed to have incurred on behalf of their children. Wesley largely reiterates the positions he took in the trial court that, for example, the expenses incurred by Catherine were submitted to him untimely and with insufficient supporting documentation. But the trial court concluded otherwise, stating that "[t]he parties presented conflicting evidence regarding billing and collecting various expenses," that Catherine submitted "credible evidence of numerous invoices, receipts, and emails documenting the" expenses and amounts owed by Wesley, and that Wesley's "justifications for not paying these invoices [were] not sufficient to warrant non-payment."

¶23 The court's reimbursement order was plainly based on the evidence Catherine submitted at trial, and Wesley has not identified flaws in that evidence rendering the trial court's reliance on it, and the findings resulting from it, clearly erroneous. *See id.* ¶ 43. Nor has Wesley demonstrated that the court's explanation was insufficiently detailed or failed to include "enough subsidiary facts to clearly show the evidence upon which" the court's findings were grounded, *see In re S.T.*, 928 P.2d 393, 398 (Utah Ct. App. 1996), with one exception. Both at trial and on appeal, Wesley challenged the lack of findings addressing his claim that Catherine had not reimbursed him for medical expenses incurred on behalf of the children. We agree with Wesley that the court's findings do not address this claim, nor do the findings include an implicit or explicit determination that the evidence Wesley offered in support of his claim was not credible.

¶24    As noted above, a trial court's "[f]ailure to make findings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Taft*, 2016 UT App 135, ¶ 33 (citation and internal quotation marks omitted). Here, Wesley submitted evidence in support of his claim for reimbursement of medical expenses, and the court neither addressed that claim nor offset the reimbursement Wesley was ordered to provide to Catherine for medical expenses by any amount. We therefore "remand to give the trial court the opportunity to enter more detailed findings as to [the medical expenses alleged by Wesley], and, if necessary, to amend" the order requiring reimbursement of medical expenses Catherine incurred on behalf of the children. *See id.* ¶ 47.[7]

## IV. Child Support

¶25    With regard to the trial court's calculation of Wesley's child support obligation, Wesley likewise asserts the court's findings were "insufficient." Specifically, Wesley asserts on appeal, as he did in the trial court, that the court's findings failed to address evidence that he had not received any credit against his child support obligation for several periods of extended parent-time, to which he allegedly was entitled. *See* Utah Code Ann. § 78B-12-216(1) (LexisNexis 2015) (providing for reductions in child support obligations due to extended parent-time).

---

7. Wesley includes an additional, single sentence in his appellate briefing, stating, "The findings also gave no offset for [Wesley] paying the full medical insurance coverage for the children." It may be that this sentence asserts a challenge to the court's findings, but given the lack of clarity as to the type of challenge asserted, as well as the absence of any citation to or development of legal authority or argument in support of this claim, we do not address it further. *See supra* ¶¶ 16–17.

¶26   At trial, the court noted that the "parties are at least in agreement that [Wesley] would get a credit for those [dates] as long as he can document [them]." The court also informally noted that because Wesley was "asking for credit," the court would place on Wesley the burden of "tak[ing] . . . the steps" needed to submit to Catherine documentation required to obtain the credit. However, the trial court's findings did not address this issue, thus leaving open a material issue with respect to the parties' divorce and attendant child support obligations. *See Taft*, 2016 UT App 135, ¶ 33. Accordingly, we remand to give the trial court the opportunity to enter findings addressing this question and, if necessary, to amend the court's order with respect to Wesley's child support obligation. *See id.* ¶ 47.

¶27   Wesley makes additional arguments challenging the trial court's calculation of child support, but it appears that at least one of these assertions was not preserved for appellate review,[8] and Wesley's other assertion relies on an incorrect understanding of the trial court's obligation with respect to factual findings and is also inadequately briefed.[9] We therefore

---

8. For example, Wesley asserts that he "should be given two child support credits for the children he is supporting with his current wife." But as with other contentions in his brief, it is unclear whether this single sentence is asserting a challenge to the adequacy of the court's findings or sufficiency of the evidence underlying them. Given that lack of clarity, the absence of citation to legal authority or development of this claim, and the absence of record citation showing preservation of this issue, we do not address it further. *See supra* ¶¶ 2, 16–17.

9. Wesley asserts the court's findings "did not consider" that Wesley's earning potential was used to calculate his child support obligation, while Catherine's earning potential was allegedly understated for that same purpose. But again, Wesley's

(continued…)

do not address further Wesley's remaining arguments with respect to child support.

## V. Parent-Time

¶28    Wesley's final challenge asserts that the trial court's order and judgment fails to conform to the court's findings with respect to parent-time. Specifically, Wesley alleges the order "add[s] restrictions" on Wesley's parent-time and "orders the parties to split [the children's] fall and spring breaks [in] alternating years," contrary to the court's findings, which provide that Wesley "shall . . . be entitled to enjoy parent time during the entire Fall and Spring school breaks." He also briefly asserts that both the trial court and Catherine were negligent in relation to the preparation and filing of the proposed parenting plan and the final order. However, under rule 24 of the Utah Rules of Appellate Procedure, a party seeking appellate review must provide a "citation to the record showing that the issue was preserved in the trial court" or "a statement of grounds for seeking review of an issue not preserved in the trial court." Utah R. App. P. 24(a)(5)(A), (B). Wesley has provided neither; instead, he cites to a rule of appellate procedure that does not provide any basis for preservation. *See id.* R. 30(a). This issue is therefore inadequately briefed, *see id.* R. 24(a)(5)(A), (B), and we do not address it further.

_____

(…continued)

argument is summarily made, without development of or citation to authority, and thus fails to carry Wesley's burden of demonstrating error. *See supra* ¶¶ 17–18. And Wesley's insistence that the court's findings explicitly "consider these facts" again misrepresents the trial court's obligation with respect to its findings. *See supra* ¶¶ 5–6.

CONCLUSION

¶29  We remand the case (1) with the instruction that the trial court make additional findings with respect to the division of marital assets detailing why the offset awarded is greater than if calculated based on the evidence Catherine presented and admitted to at trial regarding the value of marital assets, or to adjust the offset by that approximate amount; (2) with the instruction that the award to Catherine for medical and childcare expenses be reduced by $702.44, consistent with the parties' agreement on appeal; and (3) for additional findings on the questions of (a) whether there is a marital debt owed by the parties on stone engraving equipment and, if so, the allocation of that debt to either or both of the parties, (b) whether Wesley is entitled to an offset due to medical expenses he incurred on behalf of the children, and (c) whether Wesley is entitled to a credit against his child support obligations due to extended parent-time; together with whatever, if any, adjustment in the trial court's ruling it determines is appropriate in view of the additional findings. In all other respects, the ruling of the trial court is affirmed.

————————