**2018 UT App 137**

## THE UTAH COURT OF APPEALS

BRANDON CHRISTOPHER LAY,
Appellant,
*v.*
CORINNA NICOLE LAY,
Appellee.

Opinion
No. 20170230-CA
Filed July 12, 2018

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 074400807

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellant

J. Brady Kronmiller and Amy G. Larsen, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and RYAN M. HARRIS
concurred.

POHLMAN, Judge:

¶1 Brandon Christopher Lay and Corinna Nicole Lay, now Corinna Nicole Gustafson, divorced in 2008. The divorce decree awarded the parties joint legal and physical custody of their minor daughter (Child). Gustafson was designated as Child's primary physical caretaker, and Lay was granted six out of every fourteen overnights for parent-time. Around 2011, the parties informally agreed to a new parent-time schedule due to conflicts with Lay's work schedule and Child's need for more stability. Under their agreement, Lay would have Child only on alternating weekends, Friday night through Sunday night. Although Lay's scheduling conflict was eventually resolved, the

parties continued to operate under the revised parent-time schedule for approximately five years.

¶2 In 2015, the parties—for different reasons—each asked the district court to modify the divorce decree. The district court ordered that the parent-time schedule originally established in the divorce decree be followed during the summer months. For the school year, the court ordered that Lay would have Child only on alternating weekends but that his parent-time "should be Friday and Saturday nights only, not Sunday nights, to better accommodate school attendance."

¶3 Lay appeals, raising two main challenges. First, Lay contends that the district court misinterpreted the statute that provides for increased parent-time for the noncustodial parent and erred by not adopting the optional schedule described in that statute. Second, Lay contends that the district court exceeded its discretion and made legally inadequate findings regarding its decision to grant him "only alternating Friday and Saturday overnights during the school year instead of alternating Friday, Saturday, and Sunday overnights" and its decision to deny him midweek parent-time during the school year. We affirm with respect to Lay's first contention, but because we agree with Lay that the district court's findings are inadequately detailed, we remand for further proceedings.

STANDARDS OF REVIEW

¶4 We generally will not disturb the district court's parent-time determination absent a showing that the court has abused its discretion. *See Wight v. Wight*, 2011 UT App 424, ¶ 23, 268 P.3d 861. However, we review the district court's interpretation of a statute for correctness. *Id.* Likewise, "we review the legal adequacy of findings of fact for correctness as a question of law." *Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 15, 257 P.3d 478 (quotation simplified); *see also Brown v. Babbitt*, 2015 UT App 161, ¶ 5, 353 P.3d 1262 ("We review the legal sufficiency of

factual findings—that is, whether the [district] court's factual findings are sufficient to support its legal conclusions—under a correction-of-error standard, according no particular deference to the [district] court." (quotation simplified)).

ANALYSIS

I. The Statutory Optional Parent-Time Schedule

¶5    Lay first contends that the district court misinterpreted Utah Code section 30-3-35.1, which sets forth an optional parent-time schedule that provides more parent-time for the noncustodial parent than the default minimum amount. According to Lay, he satisfied his evidentiary burden under that statute, and the district court was therefore *required* to adopt that statute's optional parent-time schedule.[1]

¶6    Each divorced parent "is entitled to and responsible for frequent, meaningful, and continuing access with the parent's

---

1. In the alternative, Lay contends that the court should have adopted the parent-time schedule under Utah Code section 30-3-35.1 because it is in Child's best interest. As we discuss below, *infra* ¶¶ 26–28, the court's findings are not adequately detailed to permit meaningful appellate review. It is therefore premature for us to consider a challenge to the district court's assessment of Child's best interest.

Lay also alternatively contends that the district court's factual findings related to section 30-3-35.1 are "wholly insufficient" and provide "no explanation" for its decision not to implement the schedule under that section. While we observe that district courts "are not required . . . to discuss all aspects of a case that might support a contrary ruling," *Shuman v. Shuman*, 2017 UT App 192, ¶ 6, 406 P.3d 258, because we are remanding this case for the entry of more detailed findings, we need not consider this argument further.

child consistent with the child's best interests." Utah Code Ann. § 30-3-32(2)(b)(ii) (LexisNexis Supp. 2017). To that end, Utah Code section 30-3-35 sets a default minimum parent-time schedule "to which the noncustodial parent and the child [who is between five and eighteen years old] shall be entitled," *id.* § 30-3-35(2), unless "the court determines that Section 30-3-35.1 should apply" or a parent can establish "that more or less parent-time should be awarded," *id.* § 30-3-34(2). Under the default minimum schedule in section 30-3-35, the noncustodial parent is entitled to parent-time with the child during one weekday evening and on alternating weekends, which include Friday and Saturday overnights. *See id.* § 30-3-35(2)(a)(i), (2)(b)(i).

¶7    The Utah Code also provides an alternative statutory parent-time schedule for children between five and eighteen years old. Enacted in 2015, Utah Code section 30-3-35.1 describes an "optional" increased parent-time schedule. *Id.* § 30-3-35.1. Under this schedule, the noncustodial parent has parent-time for one weekday overnight and, on alternating weekends, three overnights (Friday through Sunday nights), resulting in the noncustodial parent having approximately 145 overnights with the child during a calendar year. *Id.* § 30-3-35.1(1), (6).

¶8    The statute directs that "[t]he parents and the court *may consider*" the increased parent-time schedule under section 30-3-35.1 "as a minimum" in two circumstances: when "the parties agree," or when "the noncustodial parent can demonstrate" the existence of certain factors. *Id.* § 30-3-35.1(2) (emphasis added). Those factors are:

> (a) the noncustodial parent has been actively involved in the child's life;

> (b) the parties are able to communicate effectively regarding the child, or the noncustodial parent has a plan to accomplish effective communications regarding the child;

(c) the noncustodial parent has the ability to facilitate the increased parent-time;

(d) the increased parent-time would be in the best interest of the child; and

(e) any other factor the court considers relevant.

*Id*.

¶9 Lay contends that, if a noncustodial parent successfully demonstrates that the factors listed in Utah Code section 30-3-35.1(2) are present, then the parent-time schedule in that section "becom[es] the minimum amount of parent time that a trial court may award to the noncustodial parent." Specifically, he asserts that once the noncustodial parent makes the required showing, the district court must order the parent-time schedule laid out in section 30-3-35.1. Lay acknowledges the statute provides that the court "may consider" the increased parent-time schedule upon such a showing, but he asserts that "[t]he word *may* in the statute should be construed . . . as *shall*." We disagree.

¶10 "When we interpret statutes, our primary objective is to ascertain the intent of the legislature." *Scott v. Scott*, 2017 UT 66, ¶ 22 (quotation simplified). Because "the best evidence of the legislature's intent is the plain language of the statute itself, we look first to the plain language of the statute." *Id.* (quotation simplified). "In so doing, we presume that the legislature used each word advisedly" and that "the expression of one term should be interpreted as the exclusion of another, thereby presuming all omissions to be purposeful." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (quotations simplified). "Further, we interpret statutes to give meaning to all parts, and avoid rendering portions of the statute superfluous." *Dahl v. Dahl*, 2015 UT 79, ¶ 159 (quotation simplified). "To do so, we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related

chapters." *Id.* (quotation simplified). "When we can ascertain the intent of the legislature from the statutory terms alone, no other interpretive tools are needed, and our task of statutory construction is typically at an end." *Scott*, 2017 UT 66, ¶ 22 (quotation simplified).

¶11 Section 30-3-35.1 states, "The parents and the court *may consider* the following increased parent-time schedule as a minimum when the parties agree or the noncustodial parent can demonstrate [certain factors] . . . ." Utah Code Ann. § 30-3-35.1(2) (LexisNexis Supp. 2017) (emphasis added). Assuming, without deciding, that Lay has demonstrated the existence of those factors, *see id.* § 30-3-35.1(2)–(4), we conclude that the district court was not required to adopt the section 30-3-35.1 parent-time schedule.

¶12 The Utah Code defines the meaning of the words "may" and "shall." "'May' means that an action is authorized or permissive." Utah Code Ann. § 68-3-12(1)(g) (LexisNexis 2016); *see also May*, Black's Law Dictionary (10th ed. 2014) ("[t]o be permitted to" and "[t]o be a possibility"); *In re A.J.B.*, 2017 UT App 237, ¶ 25, 414 P.3d 552 (indicating that the "use of the term 'may' means that a court is certainly authorized" to take a particular action but "is not necessarily required to do so"). The word "shall," on the other hand, means "an action is required or mandatory." Utah Code Ann. § 68-3-12(1)(j); *see also John Kuhni & Sons Inc. v. Labor Comm'n*, 2018 UT App 6, ¶ 10, 414 P.3d 952 (noting that "shall" is "a mandatory word requiring strict compliance with its directive" (quotation simplified)); *Diener v. Diener*, 2004 UT App 314, ¶ 12, 98 P.3d 1178 ("Ordinarily, the use of the word 'shall' in a statute creates a mandatory condition, eliminating any discretion on the part of the courts.").

¶13 Here, section 30-3-35.1's use of the term "may," rather than "shall," indicates that, provided the parties agree or the noncustodial parent makes the required showing, the district court is authorized, but not required, to consider the optional increased parent-time schedule as

described in the statute. Stated differently, the noncustodial parent's demonstration of the enumerated factors gives the court the discretion to consider the increased parent-time schedule, but there is no language in the statute making the court's consideration of that schedule—much less its adoption—mandatory. Indeed, the statute describes the parent-time schedule at issue as the "*optional* parent-time schedule." Utah Code Ann. § 30-3-35.1(1) (emphasis added). The use of the term "optional" indicates that the increased parent-time schedule involves a choice on the part of the district court and is "not compulsory." *See Optional*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/optional (last visited June 26, 2018) ("involving an option" and "not compulsory"); *Option*, Merriam-Webster.com, https://www. merriam-webster.com/dictionary/option (last visited June 26, 2018) ("an act of choosing," "the power or right to choose," or "something that may be chosen").

¶14 Notwithstanding the statute's plain language, Lay effectively invites us to construe the phrase "may consider" as "shall adopt." Lay argues that treating section 30-3-35.1 "as merely permissive instead of required would lead to absurd results and would render [the statute], in its entirety, superfluous." In other words, he suggests that unless we interpret section 30-3-35.1 as mandating the adoption of the increased parent-time schedule under certain circumstances, the statute is rendered superfluous and therefore absurd. We are not persuaded.

¶15 The absurdity doctrine applies "to reform unambiguous statutory language where applying the plain language leads to results so overwhelmingly absurd no rational legislator could have intended them."[2] *Utley v. Mill Man Steel, Inc.*, 2015 UT 75,

---

2. In arguing that our interpretation would lead to absurd results, Lay also invokes the absurd consequences canon, an interpretive canon that shares some similarity with the absurdity

(continued…)

¶ 46, 357 P.3d 992 (Durrant, C.J., concurring). Invocation of this doctrine has been described as "a drastic step" and as "strong medicine, not to be administered lightly." *Id.* ¶ 48 (quotation simplified). That is because the text of an unambiguous statute "is almost always irrefutable evidence of the legislature's intent, even if it leads to results we regard as impractical or ill-advised." *Id.* With this standard in mind, we readily conclude that the doctrine has no application here.

¶16 Section 30-3-35.1 is not rendered absurd by interpreting it as reserving in the district court the discretion of whether to consider ordering the increased parent-time. After all, district courts are generally afforded "broad discretion" to establish parent-time. *See Tobler v. Tobler*, 2014 UT App 239, ¶ 24, 337 P.3d 296 ("The district court has the discretion to establish parent-time in the best interests of the children."); Utah Code Ann. § 30-3-34(1) (LexisNexis Supp. 2017) ("If the parties are unable to agree on a parent-time schedule, the court may establish a parent-time schedule consistent with the best interests of the child."). And it is not absurd to conclude that the legislature intended to provide the district court with some guidance and tools for adopting increased parent-time schedules without eliminating the court's discretion to apply those tools in the best interest of the child. At the very least, the statute provides

---

(…continued)

doctrine but that applies under different circumstances. *See Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶¶ 46–47, 357 P.3d 992 (Durrant, C.J., concurring) (drawing distinctions between the absurd consequences canon and the absurdity doctrine). "In applying the absurd consequences canon, we merely resolve an ambiguity by choosing the reading that avoids absurd results when statutory language plausibly presents us with two alternative readings." *Id.* ¶ 47 (quotation simplified). We have no occasion to consider this canon here because Lay has not persuaded us that the word "may" in section 30-3-35.1 is ambiguous.

legislatively established standards for the district court to apply in evaluating whether increased parent-time is warranted, and it eliminates the need for a district court to independently fashion an increased parent-time schedule by providing a detailed schedule for the court to modify or adopt. We cannot conclude that this operation—even if its reach is more permissive than mandatory—is "so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *See Utley*, 2015 UT 75, ¶ 48.

¶17    For these reasons, we conclude that the plain language of section 30-3-35.1 gives the court discretion to consider, under appropriate circumstances, ordering parent-time above the minimum set in section 30-3-35, and we reject Lay's contention that the district court here was required to grant him increased parent-time pursuant to section 30-3-35.1.

## II. The District Court's Parent-Time Order

¶18    Lay next challenges the district court's decisions granting him "only alternating Friday and Saturday overnights" and denying him midweek parent-time during the school year. He raises two contentions in support. First, he contends that the court exceeded its discretion. Second, he contends that the court made legally inadequate findings. Because we agree with Lay on his second contention, we do not reach the first.[3]

¶19    The district court's factual findings "are adequate only if they are sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on

---

3. Lay also contends that, regardless of whether the court abused its discretion or the findings are inadequate, the court's decision was not in Child's best interest. As with Lay's alternative argument about Child's best interest in connection with section 30-3-35.1, *supra* note 1, our consideration of Child's best interest at this juncture is premature.

each factual issue was reached." *Rayner v. Rayner*, 2013 UT App 269, ¶ 11, 316 P.3d 455 (quotation simplified); *see also Shuman v. Shuman*, 2017 UT App 192, ¶ 5, 406 P.3d 258 ("A trial court's factual findings must be sufficiently detailed and include enough subsidiary facts to clearly show the evidence upon which they are grounded." (quotation simplified)). Put another way, findings "are adequate when they contain sufficient detail to permit appellate review to ensure that the district court's discretionary determination was rationally based." *Fish v. Fish*, 2016 UT App 125, ¶ 22, 379 P.3d 882. Indeed, the district court's obligation to render adequate findings "facilitates meaningful appellate review and ensures the parties are informed of the [district] court's reasoning." *Shuman*, 2017 UT App 192, ¶ 5.

¶20 In reviewing the legal adequacy of the district court's findings, we also bear in mind that the Utah Code requires that, in ordering parent-time, the court "shall enter the reasons underlying its order." Utah Code Ann. § 30-3-34(3) (LexisNexis Supp. 2017) ("The court shall enter the reasons underlying its order for parent-time that: (a) incorporates a parent-time schedule provided in Section 30-3-35 . . . ; or (b) provides more or less parent-time than a parent-time schedule provided in Section 30-3-35 . . . .").

¶21 Lay contends that the district court's factual findings were legally inadequate to support its decisions regarding both the weekend overnights schedule and his request for midweek parent-time. With regard to the weekend overnights schedule, Lay asserts that the district court's findings did not adequately explain its decision to grant him parent-time "only alternating Friday and Saturday overnights during the school year but not Sunday overnights," when Child "had been thriving under a schedule with Sunday overnights." Lay concedes that "the district court mentioned the accommodation of school attendance as a justification," but he asserts that "there are no findings about a need to better accommodate [Child's] school attendance." With regard to midweek parent-time, Lay contends that "the district court's decision not to allow the midweek visits

required by the minimum parent time statute is supported by inadequate findings." To buttress this position, Lay asserts that the "statutory minimum schedule requires midweek visits," that he had regularly exercised his midweek parent-time by spending lunchtime with Child, and that "this case [does] not fall under any of the exceptions to the statutory minimum schedule."

¶22 The district court made the following findings regarding the parent-time schedules that the parties had followed since their divorce. The parties' divorce decree was entered when Child was under the age of three and provided that, in a two-week period, Lay would have Child for six overnights and that Gustafson would have eight overnights. In 2011, after Child finished kindergarten, the parties informally agreed to change the parent-time schedule such that Lay would not have midweek parent-time and instead would have parent-time with Child only every other weekend from Friday night through Monday morning, amounting to three overnights during every two-week period. This informal agreement was driven by Lay's work schedule and by Child's need for stability given that "the number of transfers between parents [had] interfered with [her] well being." With rare exceptions, the parties lived by this parent-time schedule, even during the summers, for five years. The parties cooperated well under that agreement until shortly before the parties petitioned to modify the decree.

¶23 The court also made findings related to Child's schooling. Child attends a school roughly equidistant from Lay's and Gustafson's residences. Gustafson takes Child to school and has a work schedule that "allows greater flexibility as to getting [Child] to and from school than does [Lay]." In 2014 and 2015, Lay regularly would have lunch with Child during recess. At school, Child has shown that she is "doing better" and "getting more used to transition[s]."

¶24 As for Child's overall well-being, the district court found that she is "well adjusted and happy and doing well, and doing better as she gets older." Although she "still demands lots of

structure and routine," Child's behavior is "getting better," and Child responds better to changes when she is given advance notice and explanation. On the whole, Child is "making good progress," "getting more resilient," and is "more content now."

¶25   Ultimately, the district court modified the parent-time schedule. Although the parties had operated under a schedule for the past five years where Lay had parent-time every other weekend, Friday through Sunday nights, the court ordered that, for the non-school months, Lay's parent-time would remain as under the divorce decree, that is, Lay would have six overnights and Gustafson would have eight overnights in each two-week period. During the school year, however, the court ordered that Lay would have only two overnights on alternating weekends. The court explained that Lay's parent-time every other weekend "should be Friday and Saturday nights only, not Sunday nights, to better accommodate school attendance, with a return of [Child] by [Lay] to [Gustafson] on Sunday evening at 7:00 pm during school months."

¶26   We agree with Lay that the district court's findings were not sufficiently detailed "to disclose the steps" the court took to reach its ultimate conclusion to adjust Lay's alternating weekend parent-time from three overnights to two overnights. *See Rayner v. Rayner*, 2013 UT App 269, ¶ 11, 316 P.3d 455 (quotation simplified); *see also Maak v. IHC Health Services, Inc.*, 2016 UT App 73, ¶¶ 45–46, 372 P.3d 64 (explaining that without insight into the district court's reasoning and what record evidence supported its decision, the reviewing court was "unable to ascertain whether the district court's [decision] follows logically from, and is supported by, the evidence" (quotation simplified)). The court found that under the working parent-time schedule, which included Sunday overnights, Child was "well adjusted" and "doing well." Yet the court ordered a change to that schedule on the basis of "better accommodat[ing] [Child's] school attendance." And the court's factual findings do not explain why having Lay return Child to Gustafson on Sunday evenings, as opposed to dropping Child off at school on Monday

mornings, would "better accommodate [Child's] school attendance." The court did find that Gustafson drives Child to school and generally has more flexibility than Lay to take Child to and from school. But the court did not say, for instance, that Lay is incapable of taking Child to school on Monday or that his Sunday overnights under the existing schedule contributed to school absences or tardiness on Child's part.

¶27    We thus conclude that the district court's factual findings fail to support its conclusion that Sunday overnights with Lay did not accommodate Child's school attendance at least as well as Sunday overnights with Gustafson. Moreover, at oral argument before this court, Gustafson could not identify any specific findings or record evidence that could support the court's decision that Child spending Sunday nights with Gustafson better accommodated Child's school attendance; thus, we cannot conclude that the court impliedly relied on any particular evidence to so conclude.[4] *See generally Fish v. Fish*, 2016 UT App 125, ¶ 22, 379 P.3d 882 ("Unstated findings can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to record the factual determination it made." (quotation simplified)). The district court specifically found that Child was "doing well" under the existing parent-time schedule, so therefore its decision to change Lay's alternating weekend parent-time from three to two overnights is inconsistent with that finding and requires explanation so that we can ensure on review that that decision was rationally based. *See id.*; *see also In re S.T.*, 928 P.2d 393, 398 (Utah Ct. App. 1996) (stating that the trial court's findings must include enough detail "to clearly show the evidence upon which they are grounded").

---

4. In fact, Gustafson told this court that she would "almost welcome a remand" for the district court to elucidate its thinking.

¶28 Our conclusion in this regard also leads us to agree with Lay that the district court's findings were inadequate to disclose the steps by which the court reached its ultimate conclusion that Lay was not entitled to midweek parent-time during the school year. It is possible that the district court so concluded because Lay did not have midweek parent-time under the existing schedule or because the court did not want to increase the number of Child's transfers in light of her need for stability. But the court did not provide any such explanation. And given that the court ordered a change to the existing schedule for Sunday nights—a change that is inconsistent with its finding that Child was "doing well" under that schedule—we are unable to simply infer the court's reasoning or its evidentiary basis for denying midweek parent-time. Accordingly, we conclude that the district court's decisions to adjust Lay's weekend parent-time and to deny him midweek parent-time are not supported by adequate findings.

## CONCLUSION

¶29 The district court did not err in declining to adopt Lay's proposed interpretation of the statute providing for an optional parent-time schedule. The district court's factual findings, however, do not contain sufficient detail for us to ensure that its discretionary determination regarding the parent-time schedule was rationally based. Accordingly, we remand this case with the instruction that the district court make additional findings with respect to (1) whether Lay's weekend parent-time during the school year should include a Sunday overnight and (2) whether Lay should have midweek parent-time during the school year.

———————