2019 UT App 42

## THE UTAH COURT OF APPEALS

AMELIA GAYATREE LEFEVRE,
Appellee,
*v.*
CASEY LEE MACKELPRANG,
Appellant.

Opinion
No. 20171006-CA
Filed March 28, 2019

Sixth District Court, Panguitch Department
The Honorable Paul D. Lyman
No. 154600028

Van Mackelprang and Julie J. Nelson, Attorneys
for Appellant

Douglas L. Neeley, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

HARRIS, Judge:

¶1 Casey Lee Mackelprang (Father) asked the trial court to modify the governing divorce decree (the Decree) to install him as the primary custodial parent or, at least, change the parent-time schedule to increase the number of nights his daughter (Child) spent at his house. After a trial, the court denied his request, and in addition ordered him to pay the full cost of a custody evaluation. Father now asks us to review the trial court's conclusions, and we agree with Father that those conclusions were infirm. Accordingly, we vacate the trial court's order and remand the case for further proceedings.

BACKGROUND

¶2    After nearly six years of marriage, Father and Amelia Gayatree LeFevre (Mother) divorced in August 2014. They had one child—Child—together, who was five years old at the time of the parties' divorce.

¶3    For the first few years of their marriage, the couple lived in Cedar City, Utah with Child, who had some medical issues and required extra attention. According to Mother, she provided nearly all care for Child during this time period, even though she was taking classes at a university, and even though Father was not employed full-time. She maintained that Father often refused to help with child care, and when she needed someone to care for Child so that she could attend classes, she found it necessary to call upon her sister, her parents, and even a few friends, because Father was unwilling to do so himself. By the time Child was three, Father had never spent a night alone with Child and was not comfortable doing so.

¶4    Mother and Father separated in April 2012. At that point, both Mother and Father left Cedar City to live with family: Mother and Child moved to Boulder, Utah, and Father moved to Kanab, Utah. A few months later, however, in the late summer of 2012, Mother returned to Cedar City to begin work on a master's degree. Father also soon returned to Cedar City, but the parties lived in separate residences. At that point, while Mother continued to act as Child's primary caregiver, the parties worked out an informal parent-time arrangement in which Mother would take Child over to see Father on occasion but, because Father was still not entirely comfortable with caring for Child on his own, Mother was often present during these visits. Most of these visits were daytime visits for a few hours, although Father did care for Child overnight on a handful of occasions.

¶5    Mother filed for divorce in August 2012 and, in September 2013, the parties entered into a stipulated settlement

agreement that designated Mother as Child's primary physical custodian. The agreement ordered parent-time for Father every other weekend and every other Wednesday evening, a schedule that (although it did not mention the statute) was similar to the one set forth in Utah Code section 30-3-35. Nearly a year later, in August 2014, the trial court signed the Decree, incorporating the parties' agreed-upon custody and parent-time arrangement.

¶6     During this period, Father and Mother each lived in Cedar City during the week, but on most weekends Mother traveled to Boulder to visit family and to work. Mother always took Child with her to Boulder for the weekends, even on the alternating weekends on which Father would have otherwise been entitled to parent-time, and at the time Father voiced no objection. Father also was not in the habit of exercising the regular mid-week visits to which he was entitled, instead depending on Mother to bring Child over to his house for many short weekday visits as her class schedule allowed. And Father did not exercise his right to a multi-week summertime visit in 2014, even though the stipulation entitled him to do so.

¶7     After nearly three years in Cedar City, Mother and Child moved back to Boulder in April 2015, and at this point Father began to regularly exercise the weekend parent-time and the multi-week summertime visits to which the Decree entitled him. Although Father did not exercise his mid-week visits due to the distance between Cedar City and Boulder, he began to make significant efforts to travel to Boulder to participate in important events in Child's life, such as school programs and dance competitions, even when such events did not occur during his weekend. After a while, Father was of the view that things were going so well with his parent-time that he asked Mother if she would agree to increasing the number of overnights he had with Child, but Mother did not agree.

¶8     In November 2015, Father filed a petition to modify the Decree, requesting that the court alter the custody arrangement

to designate him, rather than Mother, as the primary physical custodian. In the petition, among other things, Father argued that a modification was warranted because Mother's move to Boulder in April 2015 constituted a substantial and material change in circumstances because Father was no longer able to see Child as often as he had when Mother was living in Cedar City. Father also argued that Mother was not spending a substantial amount of her parent-time with Child because she was working two jobs that required her to leave Child in the primary care of Child's maternal grandmother. Mother opposed Father's petition, and eventually filed a counter-petition requesting that the Decree be modified to remove redundant material, clarify issues, and make minor alterations to the parent-time schedule.

¶9    In November 2016, while the competing petitions were pending, Mother notified Father that she intended to relocate with Child to Las Vegas, Nevada. Mother proposed that the parties continue to follow the parent-time schedule set forth in the Decree until her move, at which point they should adopt the parent-time schedule found in Utah Code section 30-3-37(6). Father opposed Mother's request, and asked the court to hold a hearing to consider Mother's proposed move. Father also asked the court to appoint a custody evaluator to assess the parties' situation, a request Mother opposed on the ground that no such evaluation was necessary. Mother argued, in the alternative, that if the court did appoint an evaluator, it should order Father to pay all costs associated with the evaluation.

¶10    In early February 2017, Mother and Child relocated to Las Vegas. Shortly thereafter, the court appointed a custody evaluator (Evaluator) and ordered Father to front the costs associated with the appointment, but stated that it would make a final allocation of costs at a later date. The court also postponed any hearing on Mother's relocation to Las Vegas until after the completion of the custody evaluation. Around this same time, in early 2017, in addition to regularly exercising his weekend and

summertime parent-time—which he had been doing since April 2015—Father began to travel to Las Vegas once a week to exercise regular mid-week parent-time with Child.

¶11     Over the next few months, Evaluator conducted a number of interviews with Father, Mother, and Child, as well as home studies during which she observed Child. On November 1, 2017, Evaluator issued her report, in which she recommended—with one important qualification—that the status quo should continue, with Mother acting as the primary residential parent and with Father exercising parent-time on alternating weekends and Wednesdays during the school year. The important qualification was that, if Father were to move to Las Vegas so as to be geographically closer to Mother and Child, she would alter her recommendation and urge the court to adopt the alternative parent-time schedule specified in Utah Code section 30-3-35.1 (section 35.1), which would result in Father having the right to five overnights (instead of two) in every two-week period.

¶12     After learning of Evaluator's recommendations, Father almost immediately moved to Las Vegas.[1] Just a few weeks later,

---

1. Neither party contests the trial court's continuing exercise of jurisdiction over this case, even after both parties relocated to Nevada. *See* Utah Code Ann. §§ 78B-13-201(1), 202, 207 (LexisNexis 2018); *see also In re S.W.*, 2017 UT 37, ¶ 10, 424 P.3d 7 (noting that a court that originally has exclusive and continuing jurisdiction over a child custody matter may dismiss a case on jurisdictional grounds if it finds, after certain criteria are met, that it is "an inconvenient forum," but may do so "only once a child custody proceeding has been commenced in another state" (quotation simplified)). Even if we were to assume that the statutory criteria are met here given both parents' relocation, *see* Utah Code Ann. § 78B-13-202(1)(b), the trial court made no finding that it was an inconvenient forum, and there is no

(continued…)

in mid-November 2017, the court held a trial on the competing petitions to modify. Evaluator testified about her report and evaluation, and recommended that, because Father had relocated to Las Vegas, the court should implement a custody and parent-time arrangement based on section 35.1. She opined that adopting section 35.1 would have a positive impact on Child and the proposed schedule would not hurt the bond Child has with Mother, but would strengthen the bond Child has with Father by providing Child an opportunity to develop a structure and routine with him during the additional mid-week and weekend overnights. Evaluator further opined that the proposed schedule would help reduce communication problems the parties had been experiencing under the current schedule because drop-offs during the school year would occur at school. She also offered her observation that Father was a good parent who since April 2015 had made significant efforts to spend quality time with Child, and opined that Father's parenting actions over the past two-and-a-half years were more relevant than his actions during the first six years of Child's life.

¶13   Evaluator also recommended that Father's summertime parent-time should occur in one large block to reduce both the number of transitions between the parents as well as the amount of time Child spends in the car traveling back and forth from Las Vegas to Utah. Finally, in an effort to reduce the frequency of Father's requests for virtual parent-time, Evaluator recommended that Father's video or phone chats with Child should be held at scheduled times three days per week, and that the parties' email communications regarding Child be restricted to a particular day per week to facilitate more predictable and reliable communication.

---

(…continued)
indication, on the record before us, that any child custody proceeding involving these parties has been initiated in Nevada.

¶14 At the conclusion of the trial, and after hearing directly from both Father and Mother, the trial court took the matter under advisement. A few days later, the court issued a written ruling on the petitions to modify, making a few changes to the parties' Decree. Among other alterations, the court ordered that Father's summertime parent-time be exercised in one large block and that Father exercise virtual parent-time only during three half-hour periods scheduled during the week. The court denied all of Father's other requests to alter the custody and parent-time schedule, including Father's request that parent-time during the school year be implemented according to section 35.1.

¶15 On that point, the court determined that the four prerequisites for implementation of the section 35.1 schedule were not met, and made factual findings in support of that conclusion, including the following: that Father "did not participate actively in [Child's] life until the last couple of years"; that Father's "plan to accomplish effective communication is to have a designated email answering day per week" and that Father's "plan . . . does not appear to be adequate"; and that Father "presented no evidence other than his hope" that increased parent-time would be in Child's best interest. From these findings, the court made legal conclusions that Father "has not adequately been involved in [Child's] life"; that Father "has failed to present a plan to accomplish effective communication"; and that Father "has failed to present evidence that it will be in [Child's] best interest to have increased overnight visits." Because it considered the statutory prerequisites unsatisfied, the trial court declined Father's invitation to award him additional parent-time under section 35.1.

¶16 The court also ordered Father to pay all costs related to Evaluator's report. Although it did not provide reasons for its decision, it did note that Father "asked for the child custody evaluation with the hope that somehow it would find in his favor and it did not, so he should pay its entire cost."

ISSUES AND STANDARDS OF REVIEW

¶17 Father now appeals the trial court's ruling on his petition to modify, and asks us to review two aspects of that ruling. Father's main complaint is with the court's decision not to implement a parent-time arrangement based on section 35.1. We review a trial court's custody and parent-time determination for abuse of discretion, and review any underlying factual findings for clear error. *See Vaughan v. Romander*, 2015 UT App 244, ¶¶ 7–8, 360 P.3d 761. "A finding is clearly erroneous only if the finding is without adequate evidentiary support or induced by an erroneous view of the law." *Hale v. Big H Const., Inc.*, 2012 UT App 283, ¶ 9, 288 P.3d 1046 (quotation simplified).

¶18 Second, Father argues that the trial court abused its discretion in ordering him to pay the entire cost of the custody evaluation. When reviewing a court's decision to allocate costs pursuant to Utah Code section 30-3-3, "we use an abuse of discretion standard." *Peterson v. Peterson*, 818 P.2d 1305, 1310 (Utah Ct. App. 1991).

ANALYSIS

I

¶19 The main issue presented on appeal is whether the trial court erred by concluding that the statutory prerequisites set forth in Utah Code section 30-3-35.1(2) were not met. We find infirmities in the trial court's conclusions, and therefore determine that remand is necessary.

¶20 "In all custody determinations, the [trial] court's primary focus must be on the best interests of the child." *Pingree v. Pingree*, 2015 UT App 302, ¶ 7, 365 P.3d 713 (quotation simplified). Our legislature has determined that each divorced

parent "is entitled to and responsible for frequent, meaningful, and continuing access with the parent's child consistent with the child's best interests." Utah Code Ann. § 30-3-32(2)(b)(ii) (LexisNexis Supp. 2018). Relevant statutes prescribe a default minimum parent-time schedule "to which the noncustodial parent and the child shall be entitled," *id.* § 30-3-35(2), unless either (a) "the court determines that Section 30-3-35.1 should apply" or (b) a parent can establish "that more or less parent-time should be awarded," *id.* § 30-3-34(2). Under the default minimum parent-time schedule set forth in section 30-3-35, "the noncustodial parent is entitled to parent-time with the child during one weekday evening and on alternating weekends, which include Friday and Saturday overnights." *Lay v. Lay*, 2018 UT App 137, ¶ 6, 427 P.3d 1221. This default statutory schedule affords the noncustodial parent two overnights in a typical two-week period, and approximately ninety overnights during a typical calendar year (after holiday and summertime parent-time are accounted for).

¶21 As noted above, section 35.1 "provides an alternative statutory parent-time schedule" that—by extending weekend overnights by one night, and affording one weeknight overnight each week—offers the noncustodial parent the opportunity to enjoy five overnights in every two-week period, resulting in approximately 145 overnights in a typical calendar year *See id.* ¶ 7; *see also* Utah Code Ann. § 30-3-35.1(1)(a) (stating that the alternative schedule "is 145 overnights").

¶22 A trial court may implement the alternative section 35.1 schedule only if "the parties agree or the noncustodial parent can demonstrate" the presence of at least four[2] factual

---

2. The statutory list of elements is not intended to be exhaustive. Indeed, the statute itself proclaims that the court may take into account "any other factor the court considers relevant." Utah Code Ann. § 30-3-35.1(2)(e) (LexisNexis Supp. 2018).

circumstances: (a) that "the noncustodial parent has been actively involved in the child's life"; (b) that either (i) "the parties are able to communicate effectively regarding the child," or (ii) "the noncustodial parent has a plan to accomplish effective communications regarding the child"; (c) that "the noncustodial parent has the ability to facilitate the increased parent-time"; and (d) that "the increased parent-time would be in the best interest of the child." Utah Code Ann. § 30-3-35.1(2). If all four of these elements are present, then the trial court may—but is not required to—implement the parent-time schedule set forth in section 35.1. *See id.* (stating that "the court may consider" the alternative schedule if the required factual elements are present); *see also Lay*, 2018 UT App 137, ¶ 13 (stating that "the noncustodial parent's demonstration of the enumerated factors gives the court the discretion to consider the increased parent-time schedule, but there is no language in the statute making the court's consideration of that schedule—much less its adoption—mandatory").

¶23   In this case, the trial court determined that three of the four statutory prerequisites were not present, and therefore decided not to alter the parties' parent-time arrangement to afford Father additional parent-time.[3] Father argues that the trial court's determination is incorrect, and that all of the necessary prerequisites were in fact present on the facts presented at trial. In the discussion that follows, we examine each of the three remaining statutory prerequisites and, for the reasons set forth, we agree with Father that the trial court's analysis was infirm.

---

3. All parties, as well as the trial court, agreed that Father has the ability to facilitate the increased parent-time, and that therefore the third statutory prerequisite is satisfied. *See id.* § 30-3-35.1(2)(c).

A

¶24    The first of the three statutory requirements is that "the noncustodial parent has been actively involved in the child's life." Utah Code Ann. § 30-3-35.1(2)(a) (LexisNexis Supp. 2018). Father contends that he presented evidence conclusively demonstrating his active involvement in Child's life. We agree.

¶25    At the outset of the discussion, it is important to note that the trial court did not actually make a finding or a conclusion to the contrary. The court's specific finding was that Father "did not participate actively in [Child's] life *until the last couple of years*," implying that Father did participate actively in Child's life during the "couple of years" prior to trial. (Emphasis added.) Indeed, the evidence presented to the court was overwhelming that, starting in approximately April 2015, Father exercised regular weekend and summertime parent-time according to the ordered schedule, and that he made extra effort as necessary to attend Child's school functions and other celebrations in her life, even when those occurred outside his customary scheduled parent-time.[4]

---

4. Subsection (3) of section 35.1 provides factors that courts "shall consider" in determining whether a parent has been actively involved in a child's life. *See id.* § 30-3-35.1(3). Those factors include whether the parent has "demonstrated responsibility in caring for the child"; whether the parent has "involvement in day care"; whether the parent has a "presence or volunteer efforts in the child's school and at extracurricular activities"; whether the parent assists the child with homework, and whether the parent is involved in "preparation of meals, bath time, and bedtime for the child"; and whether the parent has a strong bond with the child. *Id.* In this case, the trial court's findings reveal no effort to apply these factors. In any event, as noted, the evidence clearly supports the conclusion that these

(continued…)

¶26    From this evidence, however, the trial court concluded that Father "has not adequately been involved in" Child's life. In our view, this conclusion is not supported by the evidence presented, and is in any event not the conclusion required by the statute. Indeed, the word "adequately" does not appear in the statute, which instead asks the court to determine whether Father has been "actively" involved in Child's life. *See id.* As noted above, at least for the thirty months prior to trial, Father was actively involved in Child's life, as the trial court impliedly found.

¶27    The only sensible explanation for the trial court's conclusion is that the court was looking primarily at Father's actions during the first six years of Child's life, a period in which Father was not nearly as involved in Child's life as he was during the thirty months leading up to trial. The relevant statute does not indicate whether a court should weigh recent behavior more heavily, and we certainly acknowledge that a parent who—in true "deathbed repentance" fashion—has been active in his child's life for only a few days or weeks before trial may comfortably be considered to have not been actively involved in his or her child's life, when that life is examined as a whole. But a parent who has—even in the eyes of his ex-spouse—been actively involved in his daughter's life for the thirty-month period leading up to trial has clearly been "actively involved" in her life, and any finding or conclusion to the contrary is clearly erroneous and an abuse of discretion.

¶28    Accordingly, we agree with Father that he satisfied the first statutory prerequisite.

_____

(…continued)
factors weigh in favor of Father, at least for the thirty-month period prior to trial: Father had a strong bond with Child, demonstrated responsibility for Child's care, and had a presence at Child's extracurricular and school activities.

B

¶29    Next, the statute requires that Father demonstrate either (i) that "the parties are able to communicate effectively regarding the child," or (ii) that he "has a plan to accomplish effective communications regarding the child." Utah Code Ann. § 30-3-35.1(2)(b) (LexisNexis Supp. 2018). The trial court found that "[t]here is little meaningful communication between the parties," and concluded that "[t]he parties do not communicate effectively." Father does not challenge these determinations, and thereby concedes that he cannot meet the first statutory alternative. However, Father asserts that he presented a plan to address the parties' communication issues, and argues that he can therefore meet the second statutory alternative. We agree.

¶30    The relevant statute requires only that Father present a plan for improved communication to the court; it does not require that Father's plan be foolproof or even that Father's plan—or any part of it—be adopted by the court. The statutory language requires only that the parent present a "plan to accomplish effective communication," *see id.* § 30-3-35.1(2)(b), and Father did so here.

¶31    At trial, Father adopted and advocated for the communication plan recommended by Evaluator, which included several features designed to address the communication problems that the parties were experiencing. Among those were (a) limiting email communication between the parties to a "designated email day" on which both parents would be available to electronically express and respond to concerns regarding Child; (b) limiting Father's virtual parent-time to three designated half-hour periods scheduled throughout the week, thereby limiting any ad hoc demands Father might make to speak with Child; and (c) maximizing the number of pickups and drop-offs that would occur at Child's school rather than at Mother's residence, thereby reducing the number of times Mother and Father saw each other.

¶32   The trial court ended up adopting one of these three recommendations in its ruling, in that it limited Father's virtual parent-time to three scheduled half-hour periods each week. The court did not adopt the other two parts of this plan, perhaps in part because Mother expressed dislike for the "designated email day" idea, but the fact that the court declined to adopt Father's plan in total does not mean that he did not have one. Indeed, the trial court itself referred to "[Father's] plan" in its findings, later judging that plan to be inadequate. But an inadequate plan is still a plan, and the statute imposes no requirement that the plan be found by the court to be adequate. *See id.*

¶33   Under these circumstances, the trial court abused its discretion by concluding that Father "failed to present a plan to accomplish effective communication." Father presented a plan for improved communication to the trial court, and thereby satisfied the second statutory prerequisite.

C

¶34   Finally, the statute requires that implementation of the alternative parent-time schedule would be "in the best interest of the child." Utah Code Ann. § 30-3-35.1(2)(d) (LexisNexis Supp. 2018). Ordinarily, we afford a high degree of deference to a trial court's "best interest" determination. *See Vaughan v. Romander*, 2015 UT App 244, ¶ 8, 360 P.3d 761 (stating that a trial court "has the discretion to establish parent-time in the best interests of the children," and that a trial court's "parent-time order" is reviewed for abuse of discretion (quotation simplified)). But here, the trial court did not engage in a traditional "best interest" analysis by weighing the evidence presented by each side and coming to a decision. Instead, the trial court stated flatly that Father had "presented no evidence other than his hope" that increased parent-time would benefit Child, and concluded that Father "failed to present evidence that it will be in [Child's] best interest to have increased overnight visits."

¶35 These statements are simply incorrect. Father presented quite a bit of evidence supporting his view that increased parent-time would be in Child's best interest. Most significantly, Father presented the expert testimony of Evaluator, who offered her reasoned professional opinion that the best thing for Child— now that Father had relocated to Las Vegas and was closer to Mother and Child—would be for the court to implement the alternative parent-time schedule set forth in section 35.1. In addition, Father offered his own testimony along those same lines, and even cajoled Mother into acknowledging that Father was "a good father" and that she was in favor of Father and Child spending more time together (with the proviso that she preferred that the extra parent-time take place in the summertime, to cut down on the number of exchanges during the school year).

¶36 The trial court was certainly free to decline to credit Father's evidence, and to give it less weight than Mother's evidence.[5] Had it done so here, and articulated supported reasons for its decision, we undoubtedly would have affirmed that determination. But a trial court is not free to completely ignore a litigant's evidence by making a "finding" that there is no such evidence when in fact there is.

¶37 Under these unique circumstances, we are not yet able to determine whether Father can (or cannot) satisfy the fourth statutory prerequisite. But the trial court's stated reasons for rejecting Father's position are unsupported, and are clearly erroneous and an abuse of discretion. We therefore must remand the case for further proceedings on this point, and specifically for the trial court to consider all of the evidence presented and to

---

5. But if a trial court declines to adopt the recommendation of a custody evaluator, "the court is expected to articulate some reason for rejecting that recommendation." *Zavala v. Zavala*, 2016 UT App 6, ¶ 44, 366 P.3d 422 (quotation simplified).

make a determination as to whether increased parent-time as per section 35.1 would be in Child's best interest. Because all of the other prerequisites are met, if the trial court finds, on remand, that the "best interest" prerequisite is also met, the trial court will then be permitted to exercise its discretion, if it so chooses, to implement the alternative parent-time schedule. *See* Utah Code Ann. § 30-3-35.1(2) (stating that, if the statutory prerequisites are met, the court "may consider" the increased parent-time schedule); *see also Lay v. Lay*, 2018 UT App 137, ¶ 13, 427 P.3d 1221. (stating that, even where all of the statutory prerequisites are met, a trial court is not required to implement the alternative schedule, but may do so in its discretion).

II

¶38    The second issue Father raises on appeal is whether the trial court abused its discretion in ordering him to pay the entire cost of Evaluator's report. In a case like this one, in which one party brings an action to establish an order of custody or parent-time, the trial court is statutorily authorized to make an award of costs. *See* Utah Code Ann. § 30-3-3(1) (LexisNexis 2013) (stating that "in any action to establish an order of custody [or] parent-time, . . . the court may order a party to pay the costs, . . . including expert witness fees, of the other party to enable the other party to prosecute or defend the action"). We have previously recognized that the relevant statute "is worded so as to afford divorce litigants a broader award of reimbursement, if need be, for the expenses of litigation, than those reimbursements authorized in other civil cases" in which costs are allocated according to who prevailed. *Peterson v. Peterson*, 818 P.2d 1305, 1310 (Utah Ct. App. 1991) (quotation simplified).[6] This

---

6. This standard also differs from the standard for awarding costs and fees in actions brought "to enforce" an already-established order in a domestic case. *See* Utah Code Ann. § 30-3-

(continued…)

rule is particularly appropriate in family law cases where many of the costs, including the cost of custody evaluations, relate to the best interests of the child and enable the court to make a reasoned determination on these important issues. *See id.*

¶39    While section 30-3-3(1) "empowers a court to use its sound discretion in determining whether to award costs based on need and ability to pay," *id.*, "the award or denial of such fees must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees," *Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct. App. 1998) (quotation simplified). "Failure to consider these factors is grounds for reversal on the fee issue." *Id.*

¶40    Here, the trial court ordered each party to pay their own attorney fees and costs, but ordered Father to pay the entire cost of the custody evaluation. However, there is no indication in the court's order that it considered the factors identified in *Wilde*, *see id.*, including the parties' financial ability to pay; indeed, the court gave no reasons at all for its decision to require Father to pay the entire cost of Evaluator's report, other than to note that

---

(…continued)
3(2) (LexisNexis 2013). In enforcement cases, the standard is similar to the one ordinarily used in civil cases: courts are authorized to award fees to "the party [that] substantially prevailed upon the claim or defense." *Id.* In such cases, a trial court "may disregard the financial need of the moving party" because awards under this subsection "serve no equalizing function but allow the moving party to collect fees unnecessarily incurred due to the other party's recalcitrance." *Connell v. Connell*, 2010 UT App 139, ¶¶ 28, 30, 233 P.3d 836 (quotation simplified). Thus, the "guiding factor" when awarding costs under subsection (2) is "whether the party seeking an award of fees substantially prevailed on the claim [or defense]." *Id.* ¶ 28.

Father "asked for the child custody evaluation with the hope that somehow it would find in his favor and it did not, so he should pay its entire cost."[7]

¶41   This conclusion is both inaccurate and contrary to the governing statute. Although Evaluator did not recommend that primary physical custody be changed from Mother to Father, Evaluator did recommend that Father be awarded additional parent-time if he moved to Las Vegas, which he did prior to trial. Accordingly, Evaluator's recommendation at trial was that a parent-time schedule in accordance with section 35.1 should be implemented, which recommendation was in line with Father's ultimate request at trial. In addition, the court's conclusion that Father should pay the entire cost of the custody evaluation because the evaluation did not "find in his favor" is inconsistent with a proper subsection (1) analysis. As discussed above, while subsection (1) gives the trial court discretion in determining whether to award the costs of expert witness fees, an award of such fees must be based upon the parties' ability to pay and the reasonableness of the fees, and not upon which party ultimately prevails. *See* Utah Code Ann. § 30-3-3(1); *Wilde*, 969 P.2d at 444. But instead of applying these factors, *see Wilde*, 969 P.2d at 444, the trial court appears to have erroneously allocated the cost of

---

7. We do not mean to suggest that a court, when deciding how to allocate the costs of a custody evaluation, is forbidden from taking into account the identity of the party who asked for the evaluator to be appointed. In many cases, potentially including this one, that fact might be relevant to any determination about whether the costs are "reasonable." *See Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct. App. 1998). In appropriate cases, a court may even condition the grant of a motion to appoint a custody evaluator upon the movant paying the entire cost of the evaluation. In this case, however, that does not appear to be what the trial court did.

the custody evaluation by applying the "substantially prevailed" standard found in subsection (2), which is applicable only in actions to enforce—but not to establish—custody or parent-time arrangements, *see* Utah Code Ann. § 30-3-3(2).

¶42    Here, there is no indication that the trial court considered the appropriate factors. The absence of any such findings prevents a meaningful review of the trial court's ruling, and we therefore remand the issue for further analysis. *See Wilde*, 969 P.2d at 444 (remanding the issue of fees and costs for reconsideration in light of the trial court's failure to consider the needs of the parties and their ability to pay).

CONCLUSION

¶43    The trial court incorrectly—and prematurely—concluded that the statutory prerequisites to considering the section 35.1 parent-time schedule were not met in this case. The first three statutory prerequisites were in fact met, and the trial court's ruling to the contrary was clearly erroneous. Also, the court incorrectly found that Father had submitted "no evidence" in his favor with regard to the fourth prerequisite. In addition, the trial court's decision to order Father to pay all costs associated with Evaluator's report appears to have been grounded in an inaccurate factual assumption as well as made pursuant to the incorrect statutory subsection. The trial court's ruling with regard to parent-time and costs is hereby vacated, and this matter is remanded for further proceedings consistent with this opinion.

_____