**2019 UT App 82**

# THE UTAH COURT OF APPEALS

KIRSTEEN DIDI BLOCKER,
Appellee,
*v.*
MICHAEL PHILLIP BLOCKER,
Appellant.

Opinion
No. 20170167-CA
Filed May 16, 2019

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 024402553

Michael Phillip Blocker, Appellant Pro Se

Grant W. P. Morrison, Matthew G. Morrison, and
Justin T. Morrison, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

MORTENSEN, Judge:

¶1     We previously considered this case in *Blocker v. Blocker*
(*Blocker I*), 2017 UT App 10, 391 P.3d 1051, and remanded it to
the district court to enter findings of fact to support its ruling
granting Kirsteen Didi Blocker (Mother) unsupervised
parent-time with her now sixteen-and-a-half year old son
(Child). Michael Phillip Blocker (Father) appeals the district
court's post-remand judgment. We affirm.

## BACKGROUND[1]

¶2 Mother and Father were married in 1997, separated just weeks after Child's birth in 2002, and divorced in 2004. Mother and Father were awarded joint custody, with Child's primary physical care and residence being with Mother. In response to Father's petition to modify custody and concerned about the detrimental impact of Mother's behavior on Child, the district court granted sole legal and physical custody to Father in 2010 (2010 Order). The district court ordered that Mother's parent-time be supervised until she "changed her mind set with regard to her own parenting abilities and Father's relationship with the child." *Blocker I*, 2017 UT App 10, ¶ 4, 391 P.3d 1051 (cleaned up). But concerned that supervised parent-time would be impractical for financial reasons, the court permitted Mother to have unsupervised parent-time provided that she retain a special master and participate in individual therapy by herself and joint therapy with Child. *Id.* Until she verified compliance with these conditions, Mother's parent-time remained supervised. *Id.*

¶3 In 2014, in response to Mother's motion to modify the 2010 Order and based on a home study report, the district court temporarily granted Mother unsupervised parent-time. *Id.* ¶¶ 5–6. Nearly one year later, having received no other evidence or testimony, the court decided to make Mother's unsupervised parent-time permanent without entering any findings of fact. *Id.* ¶ 7.

¶4 Father appealed, and we determined that the court had made its order granting unsupervised parent-time to Mother "permanent without explaining the basis for its decision." *Id.* ¶ 16. Because the court modified the parent-time requirements without providing any findings, we concluded

---

1. The facts of this case are set out in further detail in the original appeal. *See Blocker I*, 2017 UT App 10, ¶¶ 2–7, 391 P.3d 1051.

that we were unable to review its decision and remanded for more detailed findings. *Id.* ¶ 21.

¶5    Regarding the changed circumstances, on remand the district court made the following findings of fact: (1) Mother had continued professional therapy; (2) Mother and Mother's father were maintaining a relationship with Child by going to Father's house and being allowed to spend time with Child in their car, at the curbside, for about one hour, two to three times a week; (3) Father's brother (Uncle) supervised visits between Mother and Child during the Thanksgiving and Christmas holidays without problems being noted; (4) Child was allowed to sit and visit with Mother and her family during a church Christmas program without incident; (5) Mother was allowed to speak by phone with Child two to three times per week; (6) Child was older when the district court modified parent-time; and (7) Child had received substantial therapy at the time the district court modified parent-time. The court also identified three circumstances that rendered the 2010 Order unenforceable: (1) the parties were unable to afford the cost of supervised exchanges, supervised visitation, or the services of a special master; (2) the therapist identified in the 2010 Order to oversee therapy of Mother and Child was no longer available; and (3) the agency assigned to supervise Mother's parent-time in the 2010 Order was no longer in business in Mother's geographical area.

¶6    Regarding Child's best interest, the district court on remand noted that both parties "wished to reasonably accommodate a relationship between [Child] and [Mother]." The court explained that "curbside parent time . . . was not in the best interest of [Child]. He needed a more reasonable and less artificial opportunity to know his [Mother] and her family."

¶7    The district court further described the process by which it granted Mother unsupervised parent-time. Because parent-time supervised by Uncle had been "successful and without incident," the court concluded that Mother should be allowed to exercise unsupervised parent-time on a temporary basis. At the

time the district court modified parent-time, Mother had been exercising unsupervised parent-time for nearly one year without any reported incidents. Although Father speculated that Mother was engaging in "parental alienation" during her parent-time, the court noted that Father offered no evidence to support this contention. The court concluded by pointing out, "[Child] was 6 years older and in spite of the curbside restrictions and other difficulties over the years, he and [Mother] had developed and continued to maintain a positive parent/child relationship." And with regard to Mother, the court noted that she had "demonstrated an ability through the evaluation and her practice over several months to maintain a reasonable relationship with [Child]."[2] Thus, the court concluded that it was appropriate to "reconcile the now unenforceable 2010 Order and the current state of affairs" by allowing unsupervised parent-time as the means to "most effectively foster a continuing relationship" between Child and Mother. Father appeals.


ISSUES AND STANDARDS OF REVIEW

¶8     The first issue on appeal is whether the district court erred when it determined that the unenforceability of the conditions for Mother to have unsupervised parent-time with Child constituted a material change in circumstances to support a modification of the parent-time arrangements in the 2010 Order. The second issue is whether the district court erred by not conducting a best interest analysis when it modified the parent-time conditions of the 2010 Order. Both issues share the same standard of review. "We review a district court's decisions regarding parent-time for an abuse of discretion." *Jones v. Jones*, 2016 UT App 94, ¶ 8, 374 P.3d 45. "The district court's proximity

---

2. The district court had ordered and received a home study to determine if Mother was competent to have unsupervised parent-time with Child.

to the evidence places it in a better position than an appellate court to choose the best custody arrangement. Thus, we generally will not disturb the district court's parent-time determination absent a showing that the district court has abused its discretion." *Stephens v. Stephens*, 2018 UT App 196, ¶ 34, 437 P.3d 445 (cleaned up).

ANALYSIS

I. The Preclusion of Previously Disposed Arguments

¶9      With regard to the first issue, we note that the scope of our review of the district court's post-remand ruling is limited by the mandate rule. "The mandate rule, a subset of the law of the case doctrine, binds both the district court and the parties to honor the mandate of the appellate court. Under this rule, the decisions of an appellate court become the law of the case and cannot be reconsidered on remand." *State v. Oliver*, 2018 UT App 101, ¶ 29 n.8, 427 P.3d 495 (cleaned up); *see also Thurston v. Box Elder County*, 892 P.2d 1034, 1037 (Utah 1995) ("[T]he mandate rule[] dictates that pronouncements of an appellate court on legal issues in a case become the law of the case and must be followed in subsequent proceedings of that case."). Furthermore, when this court disposes of an argument as inadequately briefed, "the law of the case doctrine precludes us from addressing this argument anew." *See NPEC LLC v. Miller*, 2018 UT App 85, ¶ 9, 427 P.3d 357 (per curiam) (cleaned up).

¶10     Under the mandate rule, Father cannot re-litigate on remand issues we previously determined were inadequately briefed. But this is exactly what he does now. In this post-remand appeal, Father reintroduces a previously disposed issue by presenting two arguments in support of it.

¶11     First, he argues, "The district court abused its discretion when it used Mother's inability to comply with the conditions [for unsupervised parent-time] in the initial Parent Time Order

as a change in circumstances to justify modification of [Mother's] parent time because those circumstances were not those upon which the earlier decision was based." Next, Father argues, "[T]he district court abused its discretion in finding that [Mother's] unwillingness to comply with a standing court order provided the basis for a change in circumstances sufficient to modify parent time as such rewards a noncompliant parent and incentivizes her to continue her noncompliant behavior."

¶12　Similarly, in his previous appeal, Father argued, "The [district] court erred when it decided that [Mother's] inability to comply with conditions for her unsupervised parent time constituted a material change in circumstances upon which to base a modification of a custody award."[3] A panel of this court declined to address this issue because it was inadequately briefed. *Blocker I*, 2017 UT App 10, ¶ 18, 391 P.3d 1051.

¶13　Thus, in this post-remand appeal, Father raises essentially the same issue—namely, that the district court erred in concluding the unenforceability of the original parent-time conditions constituted a material change in circumstances—that he raised in his original appeal. But we have already declined to address this very issue in Father's original appeal due to inadequate briefing. "In effect, [Father] now attempts to supplement the briefing submitted in his earlier appeal. The mandate rule bars such attempts." *See State v. MacNeill*, 2016 UT App 177, ¶ 39, 380 P.3d 60. Therefore, we decline to reconsider this issue in Father's post-remand appeal.

---

3. The order of the district court giving rise to the original appeal was entitled "Order Modifying Custody." In fact, that order modified only parent-time and did not disturb the underlying custody arrangement. Father repeated this error when, in the original appeal, he imprecisely referred to a "modification of custody" when he was actually arguing that the court erred in modifying parent-time.

## II. The Post-remand Judgment

¶14 The scope of the remand directed the district court to enter findings of fact showing that there had been a material change in circumstances necessary to support a change in the parent-time provisions. *See Blocker I*, 2017 UT App 10, ¶ 21, 391 P.3d 1051.

¶15 Modification of parent-time involves two separate steps. "First, the court must find that the petitioner has made *some* showing of change in circumstances that would support a modification of parent-time." *Stephens v. Stephens*, 2018 UT App 196, ¶ 33, 437 P.3d 445 (cleaned up). "Second, the court must consider the changes in circumstance along with all other evidence relevant to the welfare or best interests of the child to determine de novo which custody arrangement will serve the welfare or best interest of the child, and modify, or refuse to modify, the decree accordingly." *Id.* (cleaned up); *see also Becker v. Becker*, 694 P.2d 608, 611 (Utah 1984) ("[A] modification of visitation rights also requires a bifurcated procedure."); *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982) ("A . . . two-step procedure should be followed where the petition to modify a custody decree requests a material change in visitation rights.").

¶16 In the context of modifying parent-time, a material change of circumstances is a "different inquiry" from a material change regarding custody. *Erickson v. Erickson*, 2018 UT App 184, ¶ 16, 437 P.3d 370 (cleaned up). "When modifying parent-time, the petitioner is required to make only *some* showing of a change in circumstances, which does not rise to the same level as the substantial and material showing required when a district court alters custody." *Id*. (cleaned up). Furthermore, in determining parent-time, "the [district] court gives highest priority to the welfare of the children over the desires of either parent. Such determinations are within the [district] court's sound discretion." *Childs v. Childs*, 967 P.2d 942, 946 n.2 (Utah Ct. App. 1998) (cleaned up).

¶17 Finally, "[t]he [district] court's findings on remand must be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on [each] factual issue was reached." *Jensen v. Jensen*, 2000 UT App 213U, para. 8 (cleaned up); *accord Lay v. Lay*, 2018 UT App 137, ¶ 19, 427 P.3d 1221; *Shuman v. Shuman*, 2017 UT App 192, ¶ 5, 406 P.3d 258. "Put another way, findings are adequate when they contain sufficient detail to permit appellate review to ensure that the district court's discretionary determination was rationally based." *Lay*, 2018 UT App 137, ¶ 19 (cleaned up). "This obligation facilitates meaningful appellate review and ensures the parties are informed of the [district] court's reasoning." *Shuman*, 2017 UT App 192, ¶ 5. Furthermore, the Utah Code requires the court to "enter the reasons underlying its order for parent-time." Utah Code Ann. § 30-3-34(3) (LexisNexis Supp. 2018).[4]

¶18 Thus, on remand, the district court in this case had two tasks. First, it was to enter findings of fact to support its ruling modifying parent-time. Second, based on those findings, the district court needed to explain the process by which it concluded that eliminating supervised parent-time was in the best interest of Child. The district court completed both tasks in its post-remand decision.

¶19 First, the district court identified changed circumstances that supported its decision to modify parent-time. *See supra* ¶ 5. Most notable among these is that Mother and Child had received substantial therapy at the time of the modification, there had been no problems reported during Mother's supervised parent-time, and Child was older and had grown in maturity. The 2010 Order stated that supervised parent-time was to

---

4. Because the statutory provision in effect at the relevant time does not differ in any material way from that now in effect, we cite the current version of the Utah Code.

continue "until such time that [Mother] demonstrates that she has changed her mind set with regard to her own parenting abilities and [Father's] relationship with [Child]." Mother's reception of therapy and the absence of reported problems are changed circumstances relative to the condition (that is, Mother's uncooperative mind-set) that originally gave rise to the imposition of supervised parent-time. The court also noted that modification was necessary because the conditions (namely, the prohibitive costs associated with supervised parent-time, the unavailability of a joint therapist, and the demise of the original supervising agency) originally imposed for Mother's unsupervised exercise of parent-time had so substantially changed as to make the 2010 Order unenforceable. By highlighting these changed circumstances, the district court made "*some* showing of a change in circumstances" necessary to modify parent-time. *See Erickson*, 2018 UT App 184, ¶ 16 (cleaned up).

¶20    Second, the district court explained the process by which it concluded a modification in parent-time was needed to serve Child's best interest. Given the unenforceability of the 2010 Order, the court noted that Uncle had been supervising Mother's parent-time for a few months as of April 2014. Mother had exercised this parent-time without incident. The court also noted that, given the parties' desire "to reasonably accommodate a relationship" between Child and Mother, "curbside parent time . . . was not in the best interest of [Child]" because "[Child] needed a more reasonable and less artificial opportunity to know his [Mother] and her family." Thus, the court allowed Uncle to continue to supervise Mother's parent-time on a temporary basis. And at the same time, the court ordered a home study. The case was set for further review after completion of the home study and continuation of parent-time supervised by Uncle. Four months later, after receiving the home study and hearing that supervised parent-time had been "successful and without incident," the district court granted Mother unsupervised parent-time on a temporary basis. About a year later, the court

determined that Mother had exercised unsupervised, statutory parent-time without incident, and it permanently granted her unsupervised parent-time. The court explained that granting Mother unsupervised parent-time was in Child's best interest because "it would most effectively foster a continuing relationship" between Child and Mother.

¶21 "[District] courts have particularly broad discretion in ordering parent-time, and we will only intervene when the [district] court's action is so flagrantly unjust as to constitute an abuse of discretion." *Jones v. Jones*, 2016 UT App 94, ¶ 13, 374 P.3d 45 (cleaned up). "The best interests of a minor child are promoted by having the child respect and love *both* parents, which includes fostering a child's relationship with the noncustodial parent." *Hanson v. Hanson*, 2009 UT App 365, ¶ 3, 223 P.3d 456 (cleaned up); *see also Jones*, 2016 UT App 94, ¶ 14 ("The paramount concern in [parent-time] matters is the child's welfare or best interest. Fostering a child's relationship with the noncustodial parent has an important bearing on the child's best interest." (cleaned up)). Thus, the district court acted well within its broad discretion when it found that modifying Mother's parent-time from supervised to unsupervised status was in Child's best interest as the most effective means to "foster a continuing relationship" between Mother and Child.

CONCLUSION

¶22 We conclude that, upon remand, the district court properly entered findings of fact that were sufficiently detailed to identify the steps it took to modify Mother's parent-time. We further conclude that the district court did not abuse its discretion in reaching the conclusion that unsupervised parent-time was in Child's best interest.

¶23 Affirmed.

————————